IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANILO VILLEGAS,

        Petitioner,

vs.                                                                                              No. Civ 10-405 MCA/LFG

RAY TERRY, Warden,

        Respondent.

# MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

THIS MATTER comes before the Court on Petitioner Danilo Villegas ("Villegas")'s Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1], and on Respondent's Motion to Dismiss Petition Without Prejudice [Doc. 9] and Amended Motion to Dismiss [Doc. 10].

Villegas filed a Response [Doc. 11] to the Motion to Dismiss. Respondent then filed a Supplemental Addendum to Motion to Dismiss [Doc. 12], and Villegas filed a Response [Doc. 13] to the Addendum. After the Court appointed counsel for Villegas, he filed a further Response [Doc. 18] to the Motion to Dismiss. Respondent did not file a Reply, and the time for doing so has expired. The Court considers the Motion to Dismiss fully briefed and ready for resolution. For the reasons given below, the Court recommends that

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Respondent's Motion to Dismiss be denied and further proceedings be taken in this matter, as outlined below.

## Factual and Procedural Background

Villegas is a native and citizen of Colombia. He was admitted to the United States or about November 26, 1990 as a Lawful Permanent Resident. [Doc. 12, Ex. 1].

On February 7, 1997, Villegas was arrested in Miami, Florida upon returning from a family visit in Colombia. He was charged with smuggling heroin. [Doc. 18, at 2]. He was convicted on September 23, 1997 in the United States District Court, Southern District of Florida, of importation of heroin and possession with intent to distribute heroin. He served 148 months of a 168-month sentence in a federal prison. [Doc. 1, at 4; Doc. 18, at 2].

Immigration and Customs Enforcement ("ICE") determined that Villegas was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) because of his drug-trafficking conviction, and he was transferred to ICE custody immediately upon his release from prison on June 15, 2009. He has been in ICE custody since that time. [Doc. 1, at 4-5].

At the time Villegas filed his Petition for Writ of Habeas Corpus on April 26, 2010, he had been in ICE detention for more than ten months. At the time of this writing, he has been in ICE detention for approximately 16 months. An order of removal was issued by an immigration judge in July 2010, but that order is on appeal and therefore is not yet final.

Respondent's original Motion to Dismiss was filed on May 31, 2010; the Amended Motion to Dismiss was filed the next day, on June 1, 2010. Respondent stated in the Amended Motion that he anticipated a removal order on June 16, 2010 and stated further that there was no indication that ICE would not be able to deport Villegas quickly after the order

2

was entered. The Court was not notified of the result of the June hearing, and on August 11, 2010, the Court ordered that counsel be appointed for Villegas. Assistant Federal Public Defender Joseph Gandert was appointed on August 12, 2010 [Docs. 14, 15].

Attorney Gandert filed a Response [Doc. 18] to the Motion to Dismiss in which he advised the Court that, as of the date of that Response (September 24, 2010), there was no final order of removal in Villegas's case. Gandert included with the Response a transcript of the most recent hearing in Villegas's immigration case, which occurred July 15, 2010 in United States Immigration Court, El Paso, Texas. The transcript shows that at the July 15 hearing, Immigration Judge William Lee Cabot issued an order of removal for Villegas from the United States to Colombia. Villegas, through counsel,[2] reserved his right to appeal the removal order. Attorney Gandert states that, as far as he knows, Villegas filed an appeal which is currently pending before the United States Court of Appeals for the Fifth Circuit.[3] [Doc. 18, at 6, and Att. A thereto, at 89-90].

Respondent makes two arguments in his Motion to Dismiss. First, he contends that because Villegas is not subject to a final removal order, he not entitled to relief under Zadvydas v. Davis, 533 U.S. 678 (2001). Secondly, Respondent contends that Villegas's pre-final order detention has not been unreasonably prolonged and therefore comports with due process. [Doc. 10].

---

[2] Mr. Gandert does not represent Villegas in the immigration case; he has separate counsel for that matter.

[3] The usual route for appeals of removal orders is to the Board of Immigration Appeals. 8 U.S.C. § 1101(a)(47)(B). It is immaterial to this case, however, where the appeal is being taken; the order of removal is not final in any event.

3

Villegas acknowledges that Zadvydas is not applicable at this point in his case; however, he contends that his detention thus far has been unreasonably prolonged through no fault of his own and therefore constitutes a denial of due process. He asks that the Court grant him a bond hearing to determine whether he is a flight risk or poses a danger to the community and to order that he be released pending the appeal of his final order of removal. [Doc. 18, at 6].

The Court finds that Respondent's Motion to Dismiss lacks merit and should be denied. The Court further finds that Villegas is entitled to be heard further regarding: (1) the reasonableness of his 16-month detention, and (2) whether he should be released pending appeal of the final order of removal.

## Discussion

A. *Zadvydas is Not Applicable in This Case*

Villegas is in ICE custody pursuant to 8 U.S.C. § 1226(c) which mandates detention of criminal aliens, and not under 8 U.S.C. § 1231 which governs detention following a final order of removal. As Respondent notes and Villegas concedes, this case does not fall within the rule of Zadvydas v. Davis, which applies only if a final order of removal has been entered.

Counsel for Villegas represents that, as far as he is aware, Villegas's appeal of the Immigration Judge's order of removal is still pending. Respondent has not notified this Court otherwise and the Court therefore assumes that the appeal is pending and the removal order is not yet final.

The Supreme Court in Zadvydas construed 8 U.S.C. § 1231 to authorize continued

4

detention of an alien following the statutory 90-day removal period, but only for such time as is necessary to secure the alien's removal. Zadvydas, at 699. More specifically, the Court held that an alien's detention for more than six months after issuance of a final order of removal is presumptively unreasonable, and that after that six-month period the alien must be given an opportunity to show there is no significant likelihood of removal in the reasonably foreseeable future. If such a showing is made, the government must respond with evidence sufficient to rebut the showing and demonstrate that detention remains reasonable. Id., at 701.

Respondent notes that the six-month removal period recognized in Zadvydas does not begin to run until the order of removal is final, and argues that Villegas's claim is not ripe at this point, and will not become so until such time as he is subject to a final order of removal and has been held in detention for more than six months subsequent to that order. [Doc. 10, at 4]. To the extent this constitutes an argument that Villegas's Petition should be dismissed because the Court lacks jurisdiction on ripeness grounds, the Court rejects that argument. As another judge in this district wrote in De La Cruz v. Terry, No. Civ. 10-213 LH/DJS, slip op. at 2-3 (D.N.M. Aug. 4, 2010):

> the Court has jurisdiction to consider habeas challenges to detention by alien detainees . . . who do not yet have a final order of removal. *See* Demore v. Kim, 538 U.S. 510 (2003) (finding jurisdiction and then proceeding to consider the merits of habeas claim of alien who was detained during removal proceedings) . . . . It does not follow from Zadvydas's holding regarding post-removal detention that the Government may indefinitely detain an alien *prior* to a final order of removal, which is what Respondent appears to argue . . . . Zadvydas does not govern the question of ripeness, and the Court concludes the case is ripe for review.

5

While not directly applicable in situations involving pre-final order detainees, Zadvydas is important in such cases for its recognition that the Constitution does not permit indefinite detention of aliens. Zadvydas, at 695-96.

B. *Due Process Considerations*

Respondent's second argument in support of the Motion to Dismiss is that Villegas's mandatory detention under 8 U.S.C. § 1226(c) is both lawful and reasonable. Villegas, on the other hand, argues that his prolonged detention has reached the point where it violates due process, and he asks for a bond hearing to determine whether he may be released pending determination of his appeal.

Respondent's arguments in support of dismissal are not persuasive. The Court will recommend that the Motions to Dismiss be denied at this point and that further proceedings be taken in this case, as discussed below.

8 U.S.C. § 1226(a) applies to non-criminal aliens and provides that such aliens are entitled to bond hearings which may lead to release during pendency of the removal proceedings. As noted above, Villegas is being held under § 1226(c), which provides that persons detained thereunder as criminal aliens "shall" be taken into custody, that they are not generally entitled to a bond hearing, and that they may be released only under certain narrow circumstances, not applicable in the present case.

Respondent points out that the purpose of the mandatory detention set forth in §

1226(c) is to ensure that deportable criminal aliens appear for their removal hearings.  The Supreme Court agrees:

> [Detention pending removal proceedings] necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.

Demore v. Kim, *supra*, at 528.

In Demore, the Court went on to hold that mandatory detention under § 1226(c) during the course of removal proceedings is "a constitutionally valid aspect of the deportation process." Id., at 523.  The Court noted that detention under § 1226(c) will always have a definite termination point – *i.e.*, when a final order of removal is granted or denied – and "in the majority of cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id., at 529.

However, the Court in that case relied on statistics indicating that in 85% of cases under § 1226(c), removal proceedings are completed in an average time of 47 days (with a median of 30 days), and in the remaining 15%, appeal takes an average of four months.  The Court concluded in Demore that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," and that such a "brief period" of detention does not violate Due Process. Id., at 523, 530.

Cases coming after Demore take note of the high court's emphasis on the "brief period" of detention under § 1226(c).  In Madrane v. Hogan, 520 F. Supp. 2d 654, 664 (M.D.Pa. 2007), a district judge found that the Demore holding is "grounded in the repeated

7

reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course."

Another judge in the same district pointed out that the Supreme Court simply did not contemplate the constitutionality of protracted detention under § 1226(c), and noted that the judge in the earlier Madrane case "rejected the respondents' inflexible position that Petitioner may be detained for as many years as it may take to obtain a final order regarding his removal simply on the basis of the mandatory language of [§ 1226(c)]." Prince v. Mukasey, 593 F. Supp. 2d 727, 733 (M.D.Pa. 2008).

The judge in Prince v. Mukasey also noted (at 732) that "at least two circuit courts have concluded that the holding [of Demore] is limited to cases where the pre-final order detainee is not held for a prolonged duration," citing Tijani v. Willis, 430 F.3d 1241, 1252 (9th Cir. 2005); and Ly v. Hansen, 351 F.3d 263, 271 (6th Cir. 2003).

After a review of post-Demore case law, the judge in Prince concluded that many courts "either have determined or are moving in the direction of finding that detention of pre-final order of removal detainees for a lengthy period may raise constitutional concerns."

> Considering detention in a broader context, we note that holding or detaining someone, including an alleged alien, for long periods of time without a hearing or while the government "puts its case together" goes against all of the constitutional concepts, long part of the fabric of the law of this country and the legal concepts of democracy. Thus, we see a growing trend by the courts of this nation in all cases where detention is involved to require the governmental authorities to show cause why detention is necessary, bearing in mind that there are, at times, circumstances such as potential danger to a community, potential terroristic conduct, and potential of flight which exist. But, as a general principle, these concerns cannot be presumptions and must be made known and demonstrated

8

> within a reasonable time, and those detained given an opportunity to respond to such charges in an appropriate manner.

Prince v. Mukasey, *supra*, at 735.

Similarly, in Alli v. Decker, 644 F. Supp. 2d 535, 539-40 (M.D.Pa. 2009), the court held:

> [A]lthough detention under § 1226(c) is not indefinite in that there will, at some point, be an end to removal proceedings, the holding of Demore that mandatory detention is constitutional cannot be divorced from the Supreme Court's observation that such detention is of a relatively short duration. The Demore court repeatedly qualified its holding by noting that mandatory detention is constitutionally permissible for the "brief," "limited," and "temporary" period necessary for removal proceedings. When it moves beyond the brief and limited period reasonably necessary to accomplish removal proceedings, mandatory detention is inconsistent with both the due process required by the Constitution and the statutory purposes of the INA [*i.e.*, the Immigration and Naturalization Act].
> [Internal citations omitted].

Villegas has now been held in detention for 16 months, and there is no indication that the immigration proceedings will result in a final order of removal in the near future. Whether 16 months is an unreasonable long period of pre-final order detention depends on the particular facts of case. *See*, Ly v. Hansen, *supra*, at 271:

> We must next define a reasonable time limitation for pre-removal detention, and finally determine whether or not the INS acted reasonably in this case. A bright-line time limitation, as imposed in Zadvydas, would not be appropriate for the pre-removal period; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant. In the absence of a set period of time, courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings.

9

In Ly v. Hansen, the court found that incarceration for one and one-half years was not reasonable. Other courts have found unreasonable pre-final order detention periods of seven years (Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942 (9th Cir. 2008); two years and eight months (Tijani v. Willis, *supra*); 20 months (Alli v. Decker, *supra*); and nine months (Alli v. Decker, *supra*).

Factors the courts have looked at in determining whether a particular person's pre-final order detention is reasonable include:

> Whether detention has continued beyond the average times necessary for completion of removal proceedings as set forth in Demore, as they help to define the "brief" and "limited" period during which mandatory detention is constitutional (Alli v. Decker, at 543);
>
> The probable extent of further removal proceedings; *i.e.*, if the end of removal proceedings is relatively near, continued detention is more likely to be reasonable whereas if proceedings are expected to continue for a prolonged period of time, continued detention will be less likely to be reasonable (Id., at 543-44);
>
> The likelihood that removal proceedings will actually result in removal; under this factor, the court may consider whether the petitioner's arguments against removal have substantial merit, and whether a repatriation treaty with the country to whom the petitioner is to be removed allows for actual removal (Id., at 544; Ly v. Hansen, at 271-72);
>
> The role of the alien himself in any delay, including his promptness in applying for habeas relief, with the caveat that "aliens 'should not be effectively punished for pursuing applicable legal remedies'" (Alli v. Decker, at 544-45; Hussain v. Mukasey, 510 F.3d 739, 743 (7th Cir. 2007); Ly v. Hansen, at 272);
>
> The government's own dilatory conduct as relevant to determining whether removal proceedings are moving toward

10

>conclusion reasonably expeditiously (Alli v. Decker, at 545; Ly v. Hansen, at 272).

Upon a finding that the length of pre-final order detention is unreasonable, some courts have simply ordered the alien released from detention. Other courts have ordered a bond hearing before the immigration judge. Yet others hold a bond hearing as part of the habeas proceedings. *See* review of cases in Alli v. Decker, at 541 & n.4.

The Court finds that the approach taken by the court in Alli v. Decker best comports with the requirements of due process and expeditious resolution of habeas petitions in cases involving claims of unduly lengthy pre-final order detention. That court bifurcated the proceedings, first considering whether the petitioner's continued detention was reasonable. If the detention is found not reasonable the court will then hold a bond hearing as part of the habeas proceedings, at which the government would bear the burden of justifying continued detention based on traditional bail factors such as flight risk and potential danger to the community.

The Alli court directed the parties to notify the court, within 20 days, whether they wish to present testimony or evidence regarding the first issue, reasonableness of the petitioners' detention. Then, "[f]ollowing an evidentiary hearing, or in lieu of one if the parties indicate that none is necessary, the Court will accept additional submissions on this issue and then determine whether the petitioners are entitled to a bond hearing." Alli v. Decker, *supra*, at 545. The Alli court rejected the approach of the Casas-Castrillon court, which ordered a bond hearing under § 1226(a):

>[That approach] funnels deportable criminal aliens to § 1226(a), a portion of the statute which Congress never intended to apply

11

> to such aliens [since it is applicable only to non-criminal aliens], and requires the Attorney General to exercise the very discretion over release of criminal aliens which Congress intended to restrict.
>
> Supervision of the reasonableness of detention through the habeas process also provides justified protection of the alien's liberty interest and conserves judicial resources. If the remedy for unreasonable detention were an order directing a bond hearing under § 1226(a), an alien who has already demonstrated that his detention is no longer reasonable would remain detained pending an initial custody determination by the DHS district director, 8 C.F.R. § 236.1(d)(1), a hearing before an immigration judge, *id.*, the IJ's decision, and a potential appeal to the BIA, *id.* § 236.1(d)(3). In addition, because discretionary bond decisions are not subject to direct judicial review, see 8 U.S.C. § 1226(e), the only recourse for an alien dissatisfied with the outcome of his bond hearing would be to return to court again and file another habeas action . . . .  A bond hearing before the habeas court avoids this circuitous and potentially lengthy process.

In the event this recommendation to deny the Motions to Dismiss is adopted, this Court intends to follow the lead of the court in Alli v. Decker.  The parties will first be given an opportunity to submit evidence on the issue of reasonableness and, if a bond hearing is held, the Court will conduct it as part of the habeas proceeding rather than directing the immigration court to hear the matter.

## Recommended Disposition

That Respondent's Motion to Dismiss and Amended Motion to Dismiss [Docs. 9, 10] be denied.  If this recommendation is adopted after the parties have an opportunity to file any objections hereto, the Court will proceed as outlined above.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge